IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BEAN DREDGING, LLC as successor to    )
BEAN DREDGING CORPORATION              )
    1055 St. Charles Ave.                          )
    New Orleans, LA 70151                         )
                                                           )
and its underwriters at interest                    )
                                                            )
**NAVIGATORS INSURANCE**              )
**SERVICES OF TEXAS, INC.**            )
    Sage Park 1                                        )
    2121 Sage, Suite 145                         )
    Houston, TX 77056                            )
                                                            )
**NATIONAL UNION FIRE**                )
**INSURANCE COMPANY**                  )
    70 Pine Street                                      )
    New York, NY 10270                         )
                                                            )
and **WATER QUALITY**                      )
**INSURANCE SYNDICATE**                )
    80 Broad St.                                         )
    New York, NY 10004                          )
                                                            )
                     **Plaintiffs,**                           )
                                                            )
v.                                                                       )
                                                            )
**UNITED STATES OF AMERICA**      )
                                                            )
    <u>Serve</u>:                                               )
                                                            )
    Michael B. Mukasey                           )
    United States Attorney General          )
    950 Pennsylvania Ave., NW               )
    Washington, DC 20530                       )
                                                            )
    Jeffrey A. Taylor                                 )
    United States Attorney's Office           )
    For the District of Columbia             )
    555 4th Street, NW                              )
    Washington, DC 20530                       )
                                                            )

|  |  |
|---|---|
| United States Coast Guard | ) |
| Coast Guard Headquarters | ) |
| Office of Claims and Litigation | ) |
| Room 1413 | ) |
| 2100 Second Street, SW | ) |
| Washington, DC 20593 | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

## COMPLAINT

Plaintiffs, BEAN DREDGING, LLC as successor to BEAN DREDGING CORPORATION, and its underwriters at interest NAVIGATORS INSURANCE SERVICES OF TEXAS, INC., NATIONAL UNION FIRE INSURANCE COMPANY and WATER QUALITY INSURANCE SYNDICATE (hereinafter collectively "Bean"), allege upon information and belief as follows:

1. This action seeks judicial review of the decisions and final agency action of the U.S. Coast Guard National Pollution Funds Center and the United States of America (collectively the "NPFC") denying the claim of Bean pursuant to the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §2701, *et seq.*, for reimbursement of uncompensated damages and removal costs, incurred in connection with an oil discharge into the navigable waters of the United States that occurred on September 6, 1999 at Humboldt Bay, California.

## JURISDICTION AND VENUE

2. Jurisdiction is proper pursuant to the following statutes: (1) 28 U.S.C. §1331 (federal question), (2) 33 U.S.C. § 2717(b) (OPA), (3) 5 U.S.C. §§701, *et seq.* (Administrative Procedures Act), and (4) 28 U.S.C. §1333 (admiralty and maritime jurisdiction).

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391(e) and 33 U.S.C. §2717(b).

## THE PARTIES

4. Bean is a limited liability corporation organized under the laws of Louisiana with its principal place of business in New Orleans. Bean Dredging Corporation was the owner and operator of the Dredge STUYVESANT on the date of the incident in question, September 6, 1999, but it formally merged into Bean Dredging LLC by Agreement dated December 29, 1999.

5. Navigators Insurance Services of Texas, Inc., National Union Fire Insurance Company and the Water Quality Insurance Syndicate are US domestic insurers of oil pollution risks who provided pollution liability insurance to the Dredge STUYVESANT and Bean and who paid some or all of the removal costs and damages detailed below.

6. The United States -- specifically, the NPFC -- administers various aspects of OPA, including Certificates of Financial Responsibility ("COFRs"), and the processing of claims for reimbursement from the Oil Spill Liability Trust Fund (the "Fund") as provided by OPA and implementing regulations, 33 C.F.R. Parts 135 *et seq.*

## THE INCIDENT

7. At the time of the incident, the Dredge STUYVESANT was performing maintenance dredging at Humboldt Bay Channel, pursuant to a United States Army Corps of Engineer contract numbered DSCW07-99-C-0012.

8. On Monday, September 6, 1999, at approximately 1200 hours, the Dredge STUYVESANT was operating smoothly, in 6 to 8 foot swells, with a northerly wind of approximately 10 knots, while dredging in a northwest to southeast direction on the inbound

passages ending at the outer end of the jetties at the channel entrance, and on a southeast to northeast orientation (towards the sea) on the outbound passage.

9. The National Weather Service at Eureka, California, which is on Humboldt Bay, broadcasts weather forecasts for the stretch of Northern California coastline from Point St. George to Cape Mendocino (which includes Humboldt Bay) within a range of twenty (20) miles from the shoreline. The 3:30 P.M. forecast on September 6, 1999, which was the last one broadcast by the National Weather Service before the incident, called for the wind to diminish to 15 to 20 knots and for combined seas of 10 feet.

10. On September 6, at approximately 1730 hours, the Captain came to the bridge to relieve the First Mate as the vessel continued on her dredging cut along a three-quarter mile track. He estimated that the seas and swells were approximately six (6) feet to twelve (12) feet (at times), from the northwest. At approximately 1800 hours, when the dredge reached the end of its inbound cut, the pumpman raised the dredge heads off of the sea bottom to facilitate a turn to port for the final outbound cut of the day. The captain had decided to make this outbound "cut" the last one of the day in order to "cut the load short (reduce the tonnage and draft in these conditions)."

11. However, as the dredge turned, she rolled heavily in the swell. As she "counter-rolled" to port, after taking a swell on her starboard side, the starboard drag head hit and fractured a hull plate in way of the starboard bunker tank.

12. As the dredge proceeded to Humboldt Bay to drop off U.S. Army Corps of Engineers personnel, the First Mate realized that the Dredge STUYVESANT was trailing an oil slick. At that time, he immediately notified the Captain.

13. After receiving the report from the First Mate, the Captain promptly notified the U.S. Coast Guard Station at Humboldt Bay, his company's local office and the National Response Center about the spill. Further investigation by the crew revealed that a starboard fuel oil bunker tank was leaking from below the waterline.

14. Eventually, the Dredge STUYVESANT sailed to a position 17 miles offshore where she was joined by a U.S. Coast Guard cutter. An oil containment boom was rigged around the stationary dredge, and several officers and crew attempted to patch the hole. By the following morning, (September 7th), the fuel oil was contained and the U.S. Coast Guard permitted the Dredge STUYVESANT to sail into Eureka on Humboldt Bay to perform temporary repairs.

15. It was estimated by the U.S. Coast Guard that approximately 2,000 gallons of Intermediate Fuel Oil ("IFO") 180 was lost before the oil spill could be contained. The aft starboard fuel oil tank was cracked by an impact from the starboard dredge head. This penetration almost certainly occurred at approximately 1800 hours on September 6, 1999, as the vessel executed a 180 degree turn to port and rolled in the swells.

## REMOVAL COSTS

16. Bean notified the Coast Guard and Bean's oil discharge removal contractor, the National Response Corporation ("NRC"), which launched a major oil discharge removal action.

17. The removal action required transportation of equipment and supplies to Humboldt Bay, CA, and involved a substantial number of workers.

18. The U.S. Coast Guard monitored the removal action conducted by NRC and its subcontractors to ensure that it was consistent with the National Contingency Plan.

19. Bean incurred uncompensated removal costs in the amount of approximately $8.5 million for this clean-up operation.

## NATURAL RESOURCE DAMAGE SETTLEMENT

20. In addition to the above costs, the Natural Resource Trustees for the United States and the State of California immediately commenced an assessment of injury to various natural resources allegedly caused by this oil spill.

21. Bean was designated as the Responsible Party by the U.S. Coast Guard and fully participated in a cooperative natural resource damage assessment that took 6 years to complete.

22. As a result of this cooperative natural resource damage assessment, the Trustees and Bean agreed to a settlement, the terms of which are set forth in a Consent Decree filed in the U.S. District Court in the Northern District of California in an action entitled *United States et al v. Bean Stuyvesant, LLC et al*, Civil No. C03-569(CRB). Bean paid natural resource damages, including cash and the acquisition of wild life habitat, in the aggregate amount of approximately $7,796,832.30.

## THE CLAIM TO THE NPFC

23. The OPA provides that the total liability of a Responsible Party and any removal costs incurred by, or on behalf of, the Responsible Party, with respect to each incident shall not exceed, for non-tank vessels, $600 per gross ton or $500,000, whichever is greater. *See* 33 U.S.C. §2704(a)(2). Here the Dredge STUYVESANT is registered as 7,100 gross ton, non-tank vessel. Accordingly, the OPA limitation amount is $4,266,000.00 (7,110 gross tons time $600 per gross tons).

24. On or about September 2, 2006, Bean filed its claim for the reimbursement of uncompensated damages and removal costs pursuant to 33 U.S.C. §2713 and the implementing regulations, 33 .C.F.R. §135 *et seq.* (the "Claim").

25. The Claim was supported by extensive documentation including charts, photographs, sworn statements from the dredge's officers, weather forecasts and affidavits from experts.

26. By letter dated November 8, 2005, the NPFC responded to the Claim by requesting additional information including the contract and related documents pertaining to Bean's work and the completion of this dredging project for the U.S. Army Corps of Engineers. The requested documentation was provided by Bean on January 19, 2006.

### THE NPFC'S FIRST DENIAL OF THE CLAIM

27. On December 14, 2006 the NPFC denied the Claim for the first time, based on a determination that Bean was prevented from bringing its Claim under the terms of the dredging contract and a release executed at the completion of the project and because the incident was caused by a violation of a federal operating regulation relating to permissible wave height for dredge operations.

### THE REQUEST FOR RECONSIDERATION OF THE CLAIM

28. On June 6, 2007 Bean submitted to the NPFC a request for reconsideration of its denial of the claim.

29. In support of this request, Bean submitted a number of additional exhibits to establish that there was no violation of the above mentioned federal regulation pertaining to wave height restrictions, including the legislative history of the applicable rule which demonstrated that the NPFC had misinterpreted the definition of "seas" as used in said

regulation, the U.S. Coast Guard's own Marine Casualty Investigation Report, which cited no such violation of this regulation but rather concluded that the casualty was caused by a combination of rough weather and the negligence of the "pipeman" who controlled the dredge's drag arm, additional affidavits of experts and the vessel's officers.

30. In addition, on the contract/release issue Bean submitted an affidavit from its Project Manager regarding the scope and intent of the release and corporate records to establish that the Bean corporate entity that was a party to the dredge contract and release was <u>not</u> the Bean entity that was the owner/operator of the Dredge STUYVESANT, i.e. the designated Responsible Party and the claimant on this subject application to the NPFC.

### **THE NPFC'S SECOND DENIAL OF THE CLAIM**

31. In a second decision dated November 13, 2007, the NPFC denied the Claim a second time.

32. In its determination, the NPFC continued to find that Bean had violated the same federal operating regulations referred to above, that these were a cause of the casualty and thus limitation was denied pursuant OPA, 33 USC §2704(c)(1)(B). However, the NPFC also decided to "withhold judgment" on the scope of the release and whether the pipeman's alleged improper stowage of the drag arm constituted gross negligence.

33. As the NPFC's procedure calls for first submissions relating to entitlement to limitation under OPA, 33 USC §2703, followed by evidence on damages only if limitation is granted, Bean had submitted no evidence on its damages and therefore the NPFC also reserved decision on damages.

34. The NPFC's final agency action was arbitrary, capricious and an abuse of discretion, or otherwise not in accordance with law.

**WHEREFORE**, plaintiffs pray this Court:

1. Declare unlawful and set aside the NPFC's decisions and actions denying Plaintiffs' Claim as arbitrary, capricious, contrary to OPA and otherwise not in accordance with law; or

2. Declare that the dredge contract and release do not bar the Claim, or

3. Remand this issue to the NPFC for further determination, including for the submission of evidence by the Plaintiffs and a determination of their entitlement to damages;

4. Award the costs and attorneys fees of this application to the Plaintiffs, and

5. Award such other relief as it deems appropriate.


Date: August 28, 2008                                    Respectfully submitted,

*(signature)*
Judith F. Bonilla (DC Bar No. 473190)
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, DC 20006
(202) 955-3000  Phone
(202) 955-5564  Fax
judith.bonilla@hklaw.com

*Counsel for Plaintiffs*

Of Counsel:
Eugene J. O'Connor (pro hac vice application to be filed)
CHALOS, O'CONNOR & DUFFY, LLP
366 Main Street
Port Washington, New York 11050
Phone:  (516)767-3600
Fax:    (516-767-3605
oconnor@codus-law.com

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Bean Dredging, LLC, as successor to Bean Dredging Corp.; Navigators Ins. Services of Tex., Inc.; Nat'l Union Fire Ins. Co.; Water Quality Ins. Syndicate

## DEFENDANTS

United States of America

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Judith F. Bonilla (D.C. Bar No. 473190)
Holland & Knight LLP
2099 Pennsylvania Ave., NW
Suite 100
Washington, DC 20006
(202) 955-3000

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/ Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ● C. Administrative Agency Review
☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)       OR       ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ⊙ G. *Habeas Corpus/ 2255*<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ⊙ H. *Employment Discrimination*<br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ⊙ I. *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ⊙ J. *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ⊙ K. *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ⊙ L. *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ⊙ M. *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ⊙ N. *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ⊙ 2 Removed from State Court
- ⊙ 3 Remanded from Appellate Court
- ⊙ 4 Reinstated or Reopened
- ⊙ 5 Transferred from another district (specify)
- ⊙ 6 Multi district Litigation
- ⊙ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 USC sec 1331; 5 USC sec 701; 33 USC sec 2717(b) Judicial review of decisions and final agency action of the USCG Nat'l Pollution Funds Center

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____    Check YES only if demanded in complaint
JURY DEMAND:    YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE August 28, 2008    SIGNATURE OF ATTORNEY OF RECORD *Judith F. Bonilla*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.